IN THE UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| *ANDREW WEDER, individually and derivatively on behalf of ReBuilder Medical, Inc.,* )<br>)<br>)<br>)<br>    Plaintiff,   )<br>) <br>v.   )<br>)<br>*DAVID PHILLIPS,*   )<br>   *Serve:* 636 Tree Line Dr., Suite A   )<br>   Charles Town, WV 25414   )<br>)<br>*REBUILDER MEDICAL INC.,*   )<br>   *Serve:* David Phillips   )<br>   636 Tree Line Dr., Suite A   )<br>   Charles Town, WV 25414   )<br>)<br>    Defendants.   )<br>) | Cause No.  3:23-cv-3779 |

## COMPLAINT

COMES NOW the Plaintiff Andrew Weder ("Weder"), individually and derivatively on behalf of ReBuilder Medical, Inc., by and through his counsel of record, Sandberg Phoenix & von Gontard P.C., and for his Complaint against the Defendants David Phillips and Rebuilder Medical, Inc. and states as follows:

### PARTIES; JURISDICTION; VENUE

1. Weder is a resident of the state of Illinois, residing in Madison County.

2. Defendant David Phillips ("Phillips") is a resident of the state of Tennessee, with a principal place of residence in Bedford County, Tennessee.

24220451.v1

3. Defendant ReBuilder Medical Inc. ("ReBuilder") is corporation organized under the laws of the state of West Virginia, with its primary place of business in Jefferson County, West Virginia.

4. Weder is a former employee and current minority shareholder of ReBuilder.

5. Phillips is a Director of ReBuilder corporation. During the times relevant to this litigation, Phillips also served or claimed to serve as ReBuilder's "Medical Director," "Chairman of the Board," and its majority shareholder.

6. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over Phillips because he engaged in conduct in Illinois giving rise to the facts and circumstances at issue in this lawsuit and has sufficient minimum contacts with Illinois to satisfy any due process concerns, and by agreement between the parties.

8. This Court has personal jurisdiction over ReBuilder because it transacts business in Illinois, has committed multiple torts against an Illinois resident plaintiff, engaged in conduct in Illinois giving rise to the facts and circumstances at issue in this lawsuit, and has sufficient minimum contacts with Illinois to satisfy any due process concerns, and by agreement between the parties.

9. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Weder's claims occurred in this District, and by agreement of the parties.

10. In addition, this Court has personal jurisdiction over both Defendants and is the appropriate venue for federal proceedings pursuant to the choice of venue clause contained in the

Employment Agreement between the parties, attached as *Exhibit 1*. Paragraph 7(h) of the Employment Agreement provides, in relevant part:

> (h) **Choice of Law and Severability**…Illinois State Court, Madison County, venue shall prevail and is agreed to as the venue for any and all litigation that may arise between the parties of this Agreement, any complaint or litigation related to this Agreement or in matters between the parties, their associates, representative, agents, successors and assigns must be brought in Illinois State Court, Madison County, and, if later removed to United States District Court, removal shall be only to the United States District Court for the Southern Illinois District.

11. This Court also has personal jurisdiction over both Defendants and is the appropriate venue for federal proceedings pursuant choice of venue clause contained in the Rebuilder Stock Purchase Agreement between the parties, attached as *Exhibit 2*. Paragraph 6.5 of the Rebuilder Stock Purchase Agreement provides:

> **6.5 Governing law.** This Agreement shall be construed and interpreted in accordance with the laws of the State of Illinois. Illinois State Court, Madison County, venue shall prevail and is agreed to as the venue for any and all litigation that may arise between the parties of this agreement, any complaint or litigation related to this agreement or in matters between the parties, their associates, representatives, agents successors and assigns, in this matter and matters related and unrelated to this agreement, and any other matters between the parties, must be brought in Illinois State Court, Madison County, and if later removed to United States District Court, removal shall be only to the United States district Court for the Southern Illinois District.

## FACTS COMMON TO ALL COUNTS

### A. *Weder's Hiring and Onboarding*

12. On or about January 28, 2023, Phillips offered Weder a position of employment and minority ownership in Rebuilder, with Weder to serve as ReBuilder's Chief Executive Officer ("CEO").

13. After his consideration and further negotiation of the offer via phone and email, over the following days of the offer, Weder, Rebuilder Medical and David Phillips, personally,

and on behalf of Rebuilder Medical, accepted the terms of employment of Weder in written agreement on February 11, 2023, with an effective date of February 6, 2023.

14. At an in-person meeting in Florida on February 11, 2023, Weder, Phillips, and Rebuilder entered into a series of agreements, including the Employment Agreement, governing (1) Weder's job duties, compensation, and ownership interest in ReBuilder; (2) the relationship between Weder and Rebuilder and Rebuilder's obligations to Weder; (3) the relationship between Phillips and Weder and Phillips' obligations to Weder; (4) Rebuilder's warranties and guarantees to Weder; and (5) Phillips' warranties and guaranties to Weder.

### B. *The Employment Agreement*

15. The Employment Agreement provided ReBuilder was to employ Weder in the position of CEO.

16. As compensation, ReBuilder agreed to pay Weder a salary of $200,000 annually with provisions for future increases and annual bonuses. *Exh. 1*, ¶ 2(a-b).

17. As further compensation and as a signing bonus, the Employment Agreement promised Weder stock amount of 15% of ReBuilder's common stock, meant to vest immediately on execution of the Employment Agreement. *Exh. 1*, ¶2(c).

18. The initial term of the Employment Agreement was for two (2) years, running until the second anniversary of its Effective Date, i.e. February 6, 2025. *Exh. 1*, ¶4(a). Unless otherwise agreed, it provides for automatic annual renewal thereafter. *Id*.

19. Weder's employment was to be at will, terminable at any time by either party. However, in the event Weder elected to resign his employment or in the event ReBuilder elected to terminate Weder's employment, with or without cause, for any reason other than his death or disability, the Employment Agreement guaranteed Weder termination compensation in the amount

equal to the remainder of the initial two (2) years employment period's salary, payable within 30 days to the date of termination. *Exh. 1*, ¶2(a). ¶4(b). ¶5(b).

20. Additionally, in the event Weder voluntarily resigned during the initial term (or any subsequent renewal) of the Employment Agreement, it guarantees him Severance Pay:

> **[5](b) Severance Pay.** If, during the term of this Agreement, the Company terminates the Executive's Employment for any reason other than Death or Disability, or if the Executive voluntarily resigns with or without Constructive Termination, (collectively, a "Termination Event"), then the Company shall pay the Executive his Base Compensation for the remaining period of the then-current term of this Agreement, but not less than of twelve (12) months. Such Base Compensation shall be paid as a lump sum within thirty (30) days after the Termination Event. In addition, the Company shall also reimburse the Executive for the payment of the Executive's COBRA or equivalent other replacement medical and dental insurance premiums for a period of six (6) months.

21. This termination compensation was to be paid in a lump sum within thirty days of the termination. *Id*. ReBuilder also agreed to pay Weder's COBRA or equivalent other replacement medical and dental insurance premiums for a period of six months. *Id*.

22. The Employment Agreement also provided for additional stock to vest to Weder in the event of termination (*Exh. 1*, ¶5(c)):

> **[5](c) Stock Options.** With respect to all stocks and stock options in the Company granted to Executive prior to the effective date of the Termination Event, an amount of option shares prorated equal to the number of months for which Executive is entitled to receive severance pay will become immediately vested, not subject to repurchase and not subject to assumption, assignment or replacement by the Company or its successors.

23. The Employment Agreement is expressly governed by Illinois law. *Exh. 1*, ¶ 7(f).

## C. *The Stock Purchase Agreement*

24. The Stock Purchase Agreement provides for the purchase of stock in ReBuilder by Weder separate from the stock awarded by the Employment Agreement.

24220451.v1

25. On or about February 10 and 11, 2023, Weder travelled to Fort Meyers, Florida with the Employment Agreement to meet with Phillips and for both parties to execute that agreement.

26. While Weder and Phillips were together at Phillips' residence in Florida on February 11, 2023, Phillips informed Weder that that he wanted to sell Weder an additional 15% interest in ReBuilder at a discounted price.

27. The purchase by Weder of the additional 15% of total Rebuilder Shares when added to the 15% of total Rebulder shares acquired by Weder through the terms of the Employment Agreement as partial compensation for his signing and employment with Rebuilder, thus increased Weder's ownership percentage of Rebuilder to 30% of total shares.

28. On February 11, 2023, while meeting together in person at Phillips' residence in Florida, Phillips presented Weder with a proposed copy of a stock purchase agreement which was backdated to December of 2022. The stock agreement proposed by Phillips provided for the purchase of an additional 15% of total shares of Rebuilder to Weder and also purported to transfer 65% of total shares of ReBuilder to another individual, Virgil Kitson, leaving Phillips with a nominal 5% interest.

29. On February 11, 2023, while meeting together in person at Phillips' residence in Florida, Weder refused to sign the backdated proposed Stock Purchase Agreement. Weder also refused to sign the proposed Stock Purchase Agreement with the separate stock transfer to Kitson, as Kitson lives in Alabama and was not present to execute the agreement.

30. February 11, 2023, while meeting together in person at Phillips' residence in Florida, at Phillips request, Weder then re-drafted the proposed Stock Purchase Agreement into two new versions of the Stock Purchase Agreement; one new version of the Stock Purchase

24220451.v1

Agreement for the purchase of the additional 15% by Weder of the shares, dated as of the actual execution by the parties, document was executed on February 11, 2023 and is attached as *Exhibit 2*.

31. The revised new version of the Stock Purchase Agreement provided for the purchase of 65% of total shares of Rebuilder by Virgil Kitson, Phillips represented the Kitson Stock Purchase Agreement would be signed later.

32. On February 11, 2023, Phillips provided and signed a receipt for the purchase of the additional fifteen percent (15%) ownership of Rebuilder by Weder. A copy of the executed and witnessed receipt is attached as *Exhibit 3*.

33. As agreed to, the Stock Purchase Agreement provides Phillips was the sole shareholder of ReBuilder, owing all 1000 outstanding shares. *Exh. 2*, ¶3.3.

34. The agreement further provides that Phillips agreed to sell Weder an additional 150 shares (15%) of ReBuilder stock (of the total issued 1000 shares) in exchange for $10 per share, an amount totaling one thousand five hundred dollars ($1,500) and "other good and valuable consideration." *Exh. 2*, ¶¶1, 2, 3.3; *Exh. 3*.

   *D. Weder's Resignation*

35. During his employment as CEO, Weder became suspicious about ReBuilder company finances and governance and conduct by Phillips to improperly enrich himself with company resources, money laundering, false and fraudulent representations among other concerning conduct.

36. Therefore, Weder tendered his resignation on March 17, 2023, effective immediately. Weder's resignation letter is attached as *Exhibit 4*.

24220451.v1

37. Following his resignation, Weder made a demand for all termination pay and other benefits and compensation owed to him under the terms of the Employment Agreement, including severance pay and reimbursement for expenses and/or health insurance premium costs incurred.

38. To date, neither Phillips nor ReBuilder has provided Weder the termination pay owed by the Employment Agreement.

39. To date, neither Phillips nor ReBuilder has provided Weder with the stock certificates for the stock owed to and promised him under the Employment Agreement. To date, neither Phillips nor ReBuilder has provided Weder with the stock certificates for the stock owed to and promised him under the Stock Purchase Agreement.

**COUNT I - BREACH OF EMPLOYMENT AGREEMENT**
**(Defendant ReBuilder - Severance Pay)**

40. Weder re-alleges, restates and incorporates by reference all prior paragraphs.

41. The Employment Agreement is a valid contract, supported by adequate and mutual consideration that is binding on its signatories, Weder, Phillips, and ReBuilder.

42. At the time of Weder's resignation, the Employment Agreement was in its initial term, a period of two years from its effective date, i.e. February 6, 2023 to February 6, 2025.

43. Upon his voluntary resignation, with or without Constructive Termination, the Employment Agreement guarantees Weder Severance Pay in the amount of "his Base Compensation for the remaining period of the then-current term of this Agreement[.]" *Exh. 1*, ¶5(b).

44. Weder was employed from February 6, 2023 to his resignation on or before March 17, 2023, approximately five weeks and three days into the term of the Employment Agreement, when he resigned due to Phillips' apparently unethical and illegal conduct and other valid reasons for resignation.

24220451.v1

45. The Employment Agreement requires ReBuilder to pay Weder the remainder of his base compensation for the current contract term, i.e. the remaining approximately 23 months of his salary.

46. Weder's base monthly salary was $16,666.67.

47. Therefore, the amount owed is approximately $383,333.33, and can be precisely ascertained from ReBuilder's payroll records, of which it has control.

48. Weder is entitled to additional compensation for the costs of insurance during his period of employment as provided by paragraph 2(d) of the Employment Agreement, which states *Exh. 1*, ¶2(d):

> **(d) Insurance Coverage Reimbursement.** Company agrees to provide full medical benefits in accordance with the Company's standard practice or shall pay Executive additional compensation at current rate of equivalent to the cost per month to cover comparable medical benefits to those provided as reasonable industry standard and to be in lieu of medical benefits, as selected by Executive in his sole discretion. Executive may but is not required to participate in any Company-sponsored benefit plans, including but not limited to the Company's medical plan, in the same or any manner as Company and any third-party benefit provider make such opportunities available to Company's regular full-time employees; provided, however, if Company does provide such Company-sponsored benefit plans and Executive is eligible to participate and if Executive elects to participate in such Company-sponsored benefit plans, Executive shall not be entitled to receive such additional monthly compensation equal to the value of said benefits.

49. Weder is entitled to additional compensation for paid vacation time during his period of employment as provided by paragraph 2(e) of the Employment Agreement, which states *Exh. 1.*, ¶2(e):

> **(e) Vacation.** During the term of this Agreement, Executive shall be entitled to vacation each year in accordance with the Company's policies in effect from time to time, buy in no event less than four (4) calendar weeks paid vacation per calendar year, Executive shall be compensated in equivalent US Dollar value for any unused or not fully utilized vacation time.

24220451.v1

50.     The amount of $383,333.33 plus the value of the cost of insurance and all unpaid vacation pay was due to Weder within thirty days of his resignation, on or before April 17, 2023.[1]

51.     ReBuilder failed to timely pay Weder the severance payments due and to date has not paid Weder any severance pay.

52.     Further, ReBuilder has not made any payments to Weder to cover the cost of comparable insurance premiums during the six-month-period following the termination of his employment as the Employment Agreement also requires, or paid any of the vacation time Weder accrued during his employment.  *Exh. 1*, ¶¶ 2(e), 5(b).

53.     ReBuilder has breached the Employment Agreement by failing to timely pay Weder the severance pay required by the agreement.

54.     Weder has made demand for the severance pay owed, but ReBuilder and Phillips have refused to cure the breach of the Employment Agreement.

55.     Weder was not at any time in breach of the Employment Agreement.

56.     Weder has been damaged by ReBuilder's breaches of the Employment Agreement as set forth herein.

57.     Weder is entitled to pre-judgment interest pursuant to 815 ILCS 205 *et seq.* in an amount to be proven at trial.

WHEREFORE, Plaintiff Andrew Weder, respectfully requests this Court enter an order entering judgment for Plaintiff and against Defendant ReBuilder, Inc. for breach of the Employment Agreement in an amount to be proven at trial, awarding Plaintiff pre- and post-judgment interest, awarding Plaintiff his costs, and for such other and further relief this Court deems just and proper under the circumstances.

**COUNT II - ILLINOIS WAGE PAYMENT AND**

---

[1] The thirtieth day from Weder's resignation, April 16, 2023, was a Sunday.

24220451.v1

**COLLECTION ACT 820 ILCS 115** *et seq.*
**(Defendant ReBuilder)**

58. Weder re-alleges, restates and incorporates by reference all prior paragraphs.

59. The Employment Agreement is a valid contract, supported by adequate and mutual consideration, which is binding on its signatories, Weder, Phillips, and ReBuilder.

60. The Employment Agreement provided and defined the terms of Weder's former employment by ReBuilder as its CEO, including, *inter alia*, the terms of Weder's compensation and final compensation upon his resignation or termination, with or without cause.

61. The Illinois Wage Payment and Collection Act, 820 ILCS 115 *et seq*. ("IWPCA") provides requirements as to the timely payment of all wages to Illinois employees, including the timely payment of compensation at the employee's termination and/or resignation.

62. For employees separated from a former employer, the IWPCA defines "final compensation" as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." 820 ILCS 115.2.

63. The IWPCA further requires "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115.5.

64. The IWPCA further provides in section 820 ILCS 115.14(a) for the payment of penalty damages and attorneys in the event of non-payment of final compensation, among other penalties:

> Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the

24220451.v1

amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees.

65. The Severance Pay owing to Weder under the Employment Agreement constitute "final compensation" within the meaning of the IWPCA.

66. The additional post-termination employment benefits owing to Weder under the Employment Agreement also constitute "final compensation" within the meaning of the IWPCA.

67. Weder has made timely demand for all final compensation to ReBuilder and Phillips.

68. To date, ReBuilder and Phillips have refused to pay the final compensation owed to Weder under the Employment Agreement.

69. Weder has incurred attorneys' fees in relation to the unpaid final compensation.

70. Weder has been damaged by ReBuilder's and Phillips' refusal to pay him final compensation under the Employment Agreement as set forth herein.

71. Weder is further entitled to pre-judgment interest pursuant to 815 ILCS 205 *et seq.* in an amount to be proven at trial.

WHEREFORE, Plaintiff Andrew Weder, respectfully requests this Court enter an order entering judgment for Plaintiff and against Defendant ReBuilder, Inc. for breach of the IWPCA in an amount to be proven at trial, awarding Plaintiff his attorneys' fees in an amount to be proven at trial, pre- and post-judgment interest, awarding Plaintiff his costs, and for such other and further relief this Court deems just and proper under the circumstances.

### COUNT III - BREACH OF EMPLOYMENT AGREEMENT
### (Defendants Rebuilder and Phillips - Stock Awards)

72. Weder re-alleges, restates and incorporates by reference all prior paragraphs.

24220451.v1

73. The Employment Agreement is a valid contract, supported by adequate and mutual consideration, that is binding on its signatories, Weder, Phillips, and ReBuilder.

74. In the Employment Agreement, Phillips and ReBuilder promised Weder stock and stock options in the amount of 15% of ReBuilder's common stock. This stock was promised to vest immediately on execution of the Employment Agreement. *Exh. 1*, ¶2(c).

75. Additionally, upon his voluntary resignation, the Employment Agreement guarantees Weder vesting of additional stock.

76. Specifically, ReBuilder promised in the Employment Agreement to provide Weder with an additional amount of "option shares prorated equal to the number of months for which Executive is entitled to receive severance pay" to be "immediately vested" equal to the amount of shares granted to him prior to the effective date of any termination. *Exh. 1*, ¶5(c).

77. Therefore, the Employment Agreement provides that he is entitled to an additional and immediate vesting of additional shares prorated for the months he is entitled to receive severance pay.

78. Neither Phillips nor ReBuilder has provided Weder with any stock certificates, either for the initial immediate vesting or the supplemental termination stock award.

79. Phillips and ReBuilder have breached the Employment Agreement by failing to timely provide Weder with the ReBuilder stock required by this provision.

80. As the other holder of the outstanding shares of Rebuilder stock, Phillips fraudulently usurped control of the stock which is rightfully owned by Weder under the provisions of the Employment Agreement. Phillips and Rebuilder have breached the Employment Agreement by failing to timely provide Weder with the ReBuilder stock required by the provisions of Employment Agreement.

24220451.v1

81. Weder has made demand for the stock required, but ReBuilder and Phillips have refused to cure the breach of the Employment Agreement.

82. Weder was not at any time in breach of the Employment Agreement.

Weder has been damaged by ReBuilder's and Phillips' breaches of the Employment Agreement as set forth herein. WHEREFORE, Plaintiff Andrew Weder, respectfully requests this Court enter an order entering judgment for Plaintiff and against Defendant ReBuilder, Inc. for breach of the Employment Agreement, ordering specific performance of the issuance of all stock owed to Weder, and/or an amount of damages to be proven at trial, awarding Plaintiff post-judgment interest, awarding Plaintiff his costs, and for such other and further relief this Court deems just and proper under the circumstances.

### COUNT IV - BREACH OF STOCK PURCHASE AGREEMENT
**(Defendant Phillips - Stock)**

83. Weder re-alleges, restates and incorporates by reference all prior paragraphs.

84. The Stock Purchase Agreement is a valid contract, supported by adequate and mutual consideration, that is binding on its signatories, Weder, Phillips, and ReBuilder.

85. In the Stock Purchase Agreement, Phillips promised to sell Weder stock in the amount of 15% of ReBuilder's stock. *Exh. 2*, ¶¶1, 2, 3.3.

86. Neither Phillips nor ReBuilder has provided Weder with any stock certificates.

87. As the party in control of the outstanding shares of Rebuilder stock, Phillips fraudulently usurped control of the stock which was to be awarded to Weder under this provision.

88. Phillips has breached the Stock Purchase Agreement by failing to timely provide Weder with the ReBuilder stock.

89. Weder has made demand for the stock required, but Phillips has refused to cure the breach of the Stock Purchase Agreement.

90. Weder was not at any time in breach of the Stock Purchase Agreement.

91. Weder has been damaged by Phillips' breaches of the Stock Purchase Agreement as set forth herein.

WHEREFORE, Plaintiff Andrew Weder, respectfully requests this Court enter an order entering judgment for Plaintiff and against Defendant Phillips for breach of the Stock Purchase Agreement, ordering specific performance of the issuance of all stock owed to Weder, and/or an amount of damages to be proven at trial, awarding Plaintiff post-judgment interest, awarding Plaintiff his costs, and for such other and further relief this Court deems just and proper under the circumstances.

### COUNT V - TORTIOUS INTERFERENCE WITH CONTRACT
### (Defendant Phillips)

92. Weder re-alleges, restates and incorporates by reference all prior paragraphs.

93. The Employment Agreement is a valid and enforceable agreements between Weder and ReBuilder, *inter alia*.

94. Phillips was and is aware of the contractual relationship between Weder and ReBuilder, and ReBuilder's severance pay and stock issuance obligations to Weder.

95. Phillips intentionally and unjustifiably induced ReBuilder to breach these agreements by refusing to meet ReBuilder's severance obligations at the time of and following Weder's resignation.

96. These actions by Phillips were undertaken with actual malice in that Phillips acted with a positive desire and intention to injure Weder.

97. By reason of these actions by Phillips, Weder has been, and continues to be, damaged.

24220451.v1

WHEREFORE, Plaintiff Andrew Weder, respectfully requests this Court enter an order entering judgment for Plaintiff and against Defendant David B. Phillips for breach of the Employment Agreement in an amount to be proven at trial, awarding Plaintiff post-judgment interest, awarding Plaintiff his costs, and for such other and further relief this Court deems just and proper under the circumstances.

### COUNT VI - CONTRACTUAL INDEMNITY
**(Defendant ReBuilder)**

98. Weder re-alleges, restates and incorporates by reference all prior paragraphs.

99. The Employment Agreement is a valid contract, supported by adequate and mutual consideration, that is binding on its signatories, Weder, Phillips, and ReBuilder.

100. In the Employment Agreement, Defendant ReBuilder promised to indemnify Weder against all expenses incurred through his "defense *or participation in* any proceeding" to which he is a party as follows, *Exh. 1*, ¶ 7(c):

> **[7](c) Indemnification.** To the fullest extent permitted by the indemnification provisions of the Articles of Incorporation and Bylaws of the Company in effect as of the date of this Agreement, and the indemnification provision of the laws of the jurisdiction of the Company's incorporation in effect from time to time, the Company shall indemnify the Executive as a director, senior officer or employee of the Company against all liabilities and reasonable expenses that may be incurred in any threatened, pending or completed action, suit or proceeding, and shall pay for the reasonable expenses incurred by the Executive in the defense or participation in any proceeding to which the Executive is a party because of his service to the Company. The rights of the Executive under this indemnification provision shall survive the termination of employment.

101. Weder has brought this action and is a party thereto because of his service to the Company, in that his former responsibilities as CEO made him privy to the fraudulent and other tortious conduct committed by Phillips to the detriment of ReBuilder, its business partners, and its shareholders.

24220451.v1

102. Weder has incurred attorneys' fees and other costs in the prosecution of this action and will continue to do so until its resolution.

103. Therefore, the attorneys' fees and other costs incurred constitute "reasonable expenses" subject to indemnity under the Employment Agreement.

WHEREFORE, entering judgment for Plaintiff and against Defendant ReBuilder for indemnity of all costs and attorneys' fees in an amount to be proven at trial, and for such other and further relief this Court deems just and proper under the circumstances.

SANDBERG PHOENIX & von GONTARD P.C.

By: */s/ Philip J. Lading*
Philip J. Lading, #48743MO
John L. Gilbert, #41282MO
Benjamin R. Wesselschmidt, #66321MO
101 W. Vandalia Street, Suite 300
Edwardsville, IL  62025
Tel:  (618) 659-9861
Fax:  (618) 659-9862
E-mail:  plading@sandbergphoenix.com
           jgilbert@sandbergphoenix.com
           bwesselschmidt@sandbergphoenix.com

*Attorneys for Plaintiff Andrew Weder*